IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE:                                )
                                      )
DOW MAURICE SPAULDING                 )    CASE NO. 05-10657
                                      )
        Debtor.                       )
                                      )

## MEMORANDUM OPINION

This case came before the Court on June 2, 2005, pursuant to the Court's own motion to show cause why the Chapter 13 filing by Dow Maurice Spaulding ("Debtor") should not be converted to a case under Chapter 7 of the Bankruptcy Code based on misrepresentations contained in the Debtor's bankruptcy schedules. For the reasons stated herein, the Court will convert the Debtor's case to one under Chapter 7 of the Bankruptcy Code pursuant to 11 U.S.C. § 1307(c).

### I. BACKGROUND

On November 12, 2004, the Debtor, an attorney, filed his first Chapter 13 petition in this District. No schedules or statements were attached to that filing; only the names of two mortgage companies. The Debtor did not appear for his Section 341(a) meeting of creditors, did not file a proposed plan, and never made any payments to the Chapter 13 trustee. On January 19, 2005, the Court granted the motion of the Chapter 13 trustee to dismiss the case.

Meanwhile, the Debtor executed a sale agreement with Kevin Monroe for real property located at 625 East Elm Street, Graham, North Carolina. The purchase price was $122,000.00. The contract was not dated, but a closing was to be held on November 30, 2004. The closing did not occur as scheduled, and no motion was filed in the Debtor's November 12, 2004 bankruptcy case to approve the sale of property of the estate outside of the Debtor's ordinary course of business.

Subsequently, the Debtor filed his second Chapter 13 bankruptcy petition on March 3, 2005. On Schedule A, the Debtor listed real property consisting of four houses. Only the street address for the houses are provided, no city or state is listed. The house and lot located at 625 East Elm Street, however, is located in Graham, North Carolina, as indicated by sale contract. Schedule A lists the value of that property at $55,000.00, notwithstanding the pending sale price for $122,000.00. The

1

Debtor also indicated on Schedule A that he was six months in arrears on his real property mortgages.

On April 11, 2005, the Debtor filed a motion for authorization to sell 625 East Elm Street in Graham, North Carolina pursuant to the contract of sale. At that time, the Court first became aware of the $67,000.00 discrepancy between the contract value and the Schedule A value of the house. According to Schedule A, the amount of the secured indebtedness on the property is only $62,000.00, meaning that the Debtor stood to reap about $60,000.00 in equity from the sale of the property before deducting any expenses. On Schedule F, the Debtor listed $37,656.28 in unsecured debts.[1] When the matter came before the Court for a hearing on May 19, 2005, the Court asked Debtor's counsel to explain the difference in valuation between the contract and the scheduled value. After the Debtor's counsel candidly admitted that he did not have an explanation, the Court filed this instant motion to show cause.

At the June 6, 2005 show cause hearing, the Court again inquired about the discrepancy between the value of 625 East Elm Street and the sales contract. The Court also brought other blatant mistakes to the Debtor's attention, like the claim on Schedule I that the Debtor earns $122,000.00 a month from the operation of a business. At the hearing, the Debtor confirmed the Court's suspicions that the figure stated for his monthly income was not accurate, and the Debtor and his attorney admitted to having knowledge of the sale contract for $122,000.00 when the petition and schedules were filed.

## II. DISCUSSION

Conversion of a case from Chapter 13 to Chapter 7 is not a common occurrence, but one that may be undertaken by the Court if that conversion is in the best interest of the creditors and cause exists for the conversion. Conversion of a Chapter 13 case is authorized by Section 1307(c), which states:

> Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case

---

[1] The Debtor claimed his four parcels of real property as exempt entireties properties. It is unknown how much of the unsecured indebtedness, if any, represents joint debts of the Debtor and his non-filing spouse.

2

under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . .

11 U.S.C. § 1307(c).[2]

While the express language of the statute limits standing to a party in interest and the United States trustee, a bankruptcy court is authorized to bring its own motion sua sponte. 11 U.S.C. § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to . . . prevent an abuse of process."); In re Greene, 127 B.R. 805, 808 (Bankr. N.D. Ohio 1991)(stating that the 1986 amendments to § 105 were enacted to overrule In re Gusam Restaurant Corp., 737 F.2d 274 (2nd Cir. 1984), which had prohibited the bankruptcy court from converting a case sua sponte).

**A. Importance of Submitting Accurate Schedules**

Bankruptcy relies heavily on self-reporting by debtors. A debtor's signature avowing to the truth and correctness of the bankruptcy petition, schedules of assets and liabilities, and statement of financial affairs is undertaken on penalty of perjury. 28 U.S.C. § 1746; Fed. R. Bankr. P. 1008. Truth in reporting is consonant with the purposes of bankruptcy, which is to "give[] the honest but unfortunate debtor . . . a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934). Debtors that purposefully misrepresent the value of their existing assets are not seeking a "fresh start;" rather, such debtors are seeking a "head start," an act that is not countenanced by the Bankruptcy Code and which may be punishable as a felony. 18 U.S.C. § 157 ("A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so– . . . (3) makes a false or fraudulent representation . . . at any time before or after the filing of the petition . . . shall be fined under this title, imprisoned not more than 5 years, or both."). E.g., In re Jarrell, 189 B.R. 374, 377 (Bankr. M.D.N.C. 1995)(stating that bankruptcy does not afford a debtor a right to a "head start"). Put plainly, a debtor must make every effort to ensure that the petition, schedules, and statements are as accurate as possible and "[n]either the trustee nor the creditors should be required to engage

---

[2]  Section 1307(e) only concerns family farmers.

in a laborious tug-of-war to drag the simple truth into the glare of daylight." Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1ˢᵗ Cir. 1987).

Of course, the belief that all bankruptcy petitions, schedules, and statements should be absolutely accurate is quixotic. Petitions, schedules, and statements are often filed hastily, memories fail, and innocent mistakes and omissions can occur. Such shortcomings, however, are anticipated by the Bankruptcy Rules, which allow a debtor to amend a petition, list, schedule, or statement as a matter of course at any time before the case is closed. Fed. R. Bankr. P. 1009(a). Innocent mistakes and omissions are easily remedied, multiple inaccuracies or falsehoods, however, "may rise to the level of reckless indifference to the truth, which is the functional equivalent of intent to deceive." Jordan v. Bren (In re Bren), 303 B.R. 610, 614 (B.A.P. 8ᵗʰ Cir. 2004), aff'd in part and rev'd in part, 122 Fed. Appx. 285 (8ᵗʰ Cir. 2005). E.g., In re Chavin, 150 F.3d 726, 728 (7ᵗʰ Cir. 1998)("Chavin concedes as he must that not caring whether some representation is true or false -- the state of mind known as 'reckless disregard' -- is, at least for purposes of the provisions of the Bankruptcy Code governing discharge, the equivalent of knowing that the representation is false and material."); Beaubouef v. Beaubouef (In re Beaubouef), 966 F.2d 174, 178 (5ᵗʰ Cir. 1992)("The existence of more than one falsehood, together with [the debtor's] failure to take advantage of the opportunity to clear up all inconsistencies and omissions when he filed his amended schedules, constituted reckless indifference to the truth and, therefore, the requisite intent to deceive.").

The misrepresentations in the Debtor's petition and schedules in this case are not innocent. The Debtor had a contract to sell 625 East Elm Street in Graham, North Carolina for $122,000.00 before he filed his bankruptcy petition and yet he listed the value of that property at $55,000.00. The Debtor also listed his monthly income as $122,0000, a statement that he knew to be untrue. These two misrepresentations create skepticism over whether the Debtor's other assets are appropriately valued.

At the hearing, the Debtor's attorney stated that he thought that the value that he had used for 625 East Elm Street was its tax value. The Debtor's attorney, however, also stated that he did not know the tax value for the property. In fact, the tax value for the East Elm Street property is readily available from the Alamance County Assessor's Office and is $55,093.00. As explained by the disclaimer located on the Alamance County Real Estate Tax information website, however, the

Assessor does not guarantee that the information provided in the tax records is free from errors and inaccuracies.[3]  Furthermore, the Debtor testified at the hearing that he had recently made substantial improvements to the property.  While a tax value is evidence of a property's value, the value of real property in this case is the amount that the property was being sold for in the negotiated sales contract between the Debtor and Kevin Monroe – $122,000.00.  See, e.g., In re AWB Assoc., G.P., 144 B.R. 270, 279 (Bankr. E.D. Pa. 1992)("'[M]arket value' . . . means the most probable price in cash, terms equivalent in cash, or in other precisely revealed terms, for which the appraised property will sell in a competitive market under all conditions requisite to a fair sale, with the buyer and seller each acting prudently, knowledgeably, and for self-interest, and assuming that neither is under undue duress.").  The Debtor cannot reasonably argue that the value of the property was $55,000.00 when the property was under a contract of sale – before the petition was filed – for $122,000.00.

In an effort to ameliorate the damage done in the Debtor's petition, the Debtor attempted at the hearing to distance himself from any wrongdoing by stating that he only reviewed the list of creditors contained in the schedules and not the value of the East Elm Street property or the schedule of income.  The Debtor avowed under penalty of perjury, however, that the information provided in the petition and schedules was true and correct to the best of his knowledge.[4]  The Bankruptcy Code requires more from the Debtor than a passive review of the information reported.  The Debtor's cavalier act of signing his schedules without fully reviewing the information submitted only emphasizes the Court's conclusion that the Debtor was not acting in good faith.  See, e.g., Hatton v. Spencer (In re Hatton), 204 B.R. 477, 484 (E.D. Va. 1997)(holding that the debtor's "extremely casual attitude towards the bankruptcy act's disclosure requirements indicates a 'reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering' which is the functional equivalent of fraud.")(citation omitted).  As the Bankruptcy Appellate Panel for the Eighth Circuit articulated:

---

[3]  Available at: http://staging.akanda.com/alamancepa/Main/Home.aspx (visited on June 8, 2005).

[4]  At the hearing, the Chapter 13 trustee stated that the Debtor testified during his Section 341 meeting that the actual values for his real property were substantially different that the values on his schedules, yet the Debtor never amended his schedules.

Declaring under penalty of perjury that the Statement of Affairs and Schedules have
been read and are accurate, when the truth is that the Schedules and Statement of
Affairs have not been read and are not accurate, is such a significantly detrimental
act in terms of the bankruptcy process that we conclude that such declaration, when
considered with the number and extent of the omissions and inaccuracies, was made
with reckless disregard for the truth and with fraudulent intent. The bankruptcy
system relies upon the truthfulness of those who seek its benefits. To allow debtors
to ignore the seriousness of their oath, submit documents to the court which contain
numerous material inaccuracies, and, when the inaccuracies are discovered, excuse
their behavior because they claim they failed to read the documents before signing
them under oath, would undermine the whole structure of the system.

Bren, 303 B.R. at 616.

Both the Debtor and his attorney are responsible for the misrepresentations in the Debtor's
petition and schedules.  Both knew of the contract to sell East Elm Street for $122,000.00 and both
are responsible for listing the value of that property as $55,000.00 in Schedule A.  The fact that
$55,093.00 is the tax value of the property and the fact that the Debtor claimed not to have fully
reviewed his petition and schedules do not excuse the misrepresentation.

**B.  "Cause" to Convert**

As stated, a case filed under Chapter 13 of the Bankruptcy Code may be converted for
"cause."  11 U.S.C. § 1307(c).  "Cause" is not specifically defined by the Bankruptcy Code, but
filing a petition with a lack of good faith may constitutes sufficient "cause" under Section 1307(c)
to either convert or dismiss a case.  E.g., Banks v. Vandiver (In re Banks), 267 F.3d 875, 876 (8th Cir.
2001)(finding no abuse of discretion by the bankruptcy court in dismissing a Chapter 13 case for lack
of good faith); Eisen v. Curry (In re Eisen), 14 F.3d 469, 470 (9th Cir. 1994)("A Chapter 13 petition
filed in bad faith may be dismissed 'for cause' pursuant to 11 U.S.C. § 1307(c)."); 1 Keith M.
Lundin, Chapter 13 Bankruptcy § 5-2 (3rd ed. 2004)("Although not mentioned in the Code as a
condition for eligibility for Chapter 13, many reported decisions have considered a debtor's 'good
faith' at the threshold of a Chapter 13 case, typically in the context of a motion to dismiss, as if good
faith were a predicate to Chapter 13 relief.").

A determination of whether a case was filed in good faith requires the bankruptcy court to
consider the totality of the circumstances.  In re Gier, 986 F.2d 1326, 1329 (10th Cir. 1993)("[I]n
determining whether a Chapter 13 petition has been filed in bad faith under 1307(c), the bankruptcy
court must consider the 'totality of the circumstances.'"); In re Love, 957 F.2d 1350, 1356 (7th Cir.

1992)("[G]ood faith under Section 1307(c) should be determined by looking to the totality of circumstances."). A "good faith" requirement under Section 1307(c) is similar to that under Section 1325(c), except that "Section 1307(c) is a broad inquiry focusing on the fairness involved in the initiation of Chapter 13 bankruptcy proceedings, while the good faith inquiry under Section 1325(c) is a more narrow inquiry focusing on the good faith with regard to the Chapter 13 plan." Id. at 1360. The Bankruptcy Appellate Panel for the First Circuit listed four factors to consider when determining if the mere filing of petition was done in good faith:

> (1) whether the debtor misrepresented facts in her petition, unfairly manipulated the Bankruptcy Code, or otherwise filed her Chapter 13 petition in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor only intended to defeat state court litigation; and (4) whether egregious behavior is present

Cabral v. Shamban (In Re Cabral), 285 B.R. 563, 573 (B.A.P. 1st Cir. 2002)(affirming a conversion to Chapter 7 when the debtor attempted to conceal a non-exempt personal injury claim from her creditors). See also In re Powers, 48 B.R. 120, 121 (Bankr. M.D. La. 1985)(omitting assets and grossly undervaluing income tax refund used as a grounds to convert the case).

Application of these four factors in this case demonstrates that the Debtor's case was not filed in good faith. First, as discussed above, the Debtor misrepresented the value of his Elm Street property to be $55,000.00 when the Debtor had a pending contract to sell that property pre-petition for $122,000.00. Second, this is not the Debtor's first bankruptcy filing. The Debtor filed a Chapter 13 petition in November 2004, without any accompanying schedules, statement, or a modicum of effort to prosecute the bankruptcy case. This case was filed in March 2005. Third, it appears that a significant motive for the Debtor's filing is to defeat or forestall creditor attempts to foreclose on his four real properties. On Schedule A, the Debtor stated that he was about six months behind on payments to his secured creditors. Defeating state court litigation, however, might not have been the Debtor's only motive for filing inasmuch as the Debtor also seeks to discharge about $37,600.00 in unsecured debts. Fourth, egregious behavior is present in this case due to the material misrepresentations concerning the Debtor's property values, the blatant misstatement on Schedule I concerning the Debtor's monthly income, and the Debtor's cavalier attitude displayed at the hearing in this matter towards the accuracy of his schedules and the weight of his oath. Therefore, based on the weight of the evidence, the Court finds that this case was not filed in good faith and that "cause"

exists under Section 1307(c) to either convert or dismiss the case.

**C. Conversion or Dismissal**

Having determined that the Debtor did not file his Chapter 13 petition in good faith, the Court must decide whether the case should be dismissed or converted. Section 1307(c) directs that the relevant guideline is the best interests of the creditors and the estate. 11 U.S.C. § 1307(c).

Based on the facts of this case, the Court finds that the best interest of the creditors and the estate are served by conversion to Chapter 7 of the Bankruptcy Code for three reasons. First, there is no evidence that the Debtor's unsecured creditors would be better served if the case were to proceed under Chapter 13 or if it were to be dismissed. The proposed Chapter 13 plan submitted by the Debtor provides that the Debtor is to make a monthly plan payment of $4,537.00 for sixty months. Of that amount, $3,769.73 is to be used to pay the ongoing secured debt payments on four mortgages. An additional $478.00 is to be used to cure the existing arrearage on the respective mortgages. Of the remaining amount, after the costs of administration, the Debtor estimates that the return to general unsecured creditors will be only 10%.[5] The Debtor claims to have little, if any, non-exempt personal property, and he claims that his real property is exempt insofar as it is held in a tenancy by the entirety. At this stage, it is uncertain how much, if any, of the unsecured indebtedness represents the joint obligations of the Debtor and his spouse. Based on the substantial equity realized from the sale of the property at 625 East Elm Street alone, any joint creditors stand to receive all of what they are owed if the Debtor's property is liquidated by a Chapter 7 trustee.

Second, the secured creditors of the Debtor would be better served in a liquidating case under Chapter 7 than being paid through a Chapter 13 plan. Based on the Debtor's Schedules A and D, two of the Debtor's properties have no equity. As discussed, one of those properties is 625 East Elm Street, in which the Debtor in actuality has substantial equity. The second purportedly undersecured property is located at 202 Porta-O-Vista. On Schedule A, this property is valued at $150,000.00 and the amount of the debt is listed at $150,000.00. On Schedule D, however, the amount of the debt is listed at $250,000.00 and the corresponding monthly payments are $2,233.00. If this property is not the Debtor's principal residence, then there is possibility that the total amount of the debt, if it

---

[5] The Court expresses no opinion on whether the Debtor's proposed plan could meet the requirements of confirmation.

8

is $250,000.00, could be stripped down to the value of the collateral, which is stated to be $150,000.00.  See, e.g., 11 U.S.C. § 1322(b)(2) (allowing the modification of secured claim but prohibiting lien stripping when the mortgage is secured "only by a security interest in real property that is the debtor's principal residence . . . .").  Given the Debtor's misrepresentation concerning the 625 East Elm Street property, the Debtor's secured creditors would likely benefit from the independent valuation and liquidation by a Chapter 7 trustee.

Third, if the Debtor were to stay in Chapter 13, he would have a near absolute right to dismiss his case.  11 U.S.C. § 1307(b); Molitor v. Eidson (In re Molitor), 76 F.3d 218, 220 (8th Cir. 1996)(noting a split of authority on whether a debtor has an absolute right to dismiss a Chapter 13 case under Section 1307(b), or whether that right is tempered by Section 1307(c)).  The Debtor already professes to be six months behind on his various mortgages, the Debtor has already filed one Chapter 13 case  and allowed the case to be dismissed.  Based on the overall circumstances of this case, the Court believes that there is a distinct possibility that the Debtor might seek to dismiss it. A dismissal would force the secured creditors to begin new foreclosure proceedings.  On the other hand, a foreclosure proceeding would not be necessary if the Chapter 7 trustee elects to liquidate the Debtor's real property.

Accordingly, conversion of this case to one under Chapter 7 of the Bankruptcy Code is in the best interest of the creditors and the estate because there is no basis for believing that unsecured creditors would be paid more in a Chapter 13 proceeding, secured creditors would reap substantial benefits if a Chapter 7 trustee were to liquidate the Debtor's real property, and the danger to secured and unsecured creditors of a subsequent dismissal and refiling under Section 1307(b) would be eliminated.

### III. CONCLUSION

Based on the Debtor's material misrepresentations, cavalier attitude toward the accuracy of his schedules, and the overall circumstances of this case, the Court finds that the Debtor's petition was not filed in good faith and that cause exists to convert the case to one under Chapter 7.  This memorandum opinion constitutes the Court's findings of fact and conclusions of law.  A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

A copy of the foregoing was served
electronically or conventionally to:

Michael D. West

Anita Jo Kinlaw Troxler

Dow Maurice Spaulding
310 S Marshall St
Graham, NC 27253

Christopher T. Watkins
P O Box 862
Graham, NC 27253